## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARRELL DIODATO,** | : | **Civil No. 1:12-CV-2454** |
| | : | |
| **Plaintiff,** | : | |
| vs. | : | **(Judge Conner)** |
| | : | |
| **WELLS FARGO INSURANCE** | : | **(Magistrate Judge Carlson)** |
| **SERVICES USA, INC., et al.** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I.     INTRODUCTION

This action is brought by Darrell Diodato, an insurance professional, against his former employer, Wells Fargo. Diodato's complaint alleges that he was wrongfully terminated by Wells Fargo, and brings common law claims, including fraudulent misrepresentation and/or fraudulent inducement, breach of contractual covenant of good faith and fair dealing, breach of contract arising out of nonpayment of compensation, defamation, commercial disparagement, unauthorized use of name or likeness, unjust enrichment and unfair competition. Diodato's complaint also contains statutory claims arising under both the Pennsylvania Wage Payment and Collection Law (43 P.S. §260.1 et seq.), 42 Pa.C.S.§ 8316, and the Lanham Act (15 U.S.C. §1925). Wells Fargo, in turn, has brought counterclaims against Diodato, including claims for alleged breach of Diodato's restrictive covenant with Wells

Fargo, misappropriation and misuse of trade secrets, unfair competition, conversion and tortious interference with prospective business relations.

The parties are now engaged in an occasionally contentious course of discovery in this litigation, and we have been assigned to assist the parties in resolving discovery disputes. Towards that goal we met with counsel and conducted a telephonic conference call on July 3, 2013. (Doc. 26 and 27.) As part of that call, we agreed to conduct an *in camera* review of documents identified by Wells Fargo on its privilege log as attorney-client privileged documents. We received those documents on July 5, and conducted a preliminary review of the documents, which consisted of 12 documents, five of which were withheld by Wells Fargo and seven of which were redacted by the defendants. Having conducted this initial review, we sustained the invocation of the privilege with respect to the withheld documents, but ordered supplemental submissions regarding the redacted documents.

We have now received that supplemental submission, which consists of copies of one remaining contested document, *in camera*, in both a redacted and unredacted form, so we could complete this task that the parties have asked us to undertake, and rule upon these remaining claims of privilege. Having examined this redacted document, for the reasons set forth below, the defendants' claim of privilege will be SUSTAINED.

## II.    DISCUSSION

As we have previously observed for the parties, the United States Court of

Appeals for the Third Circuit recently summarized the purposes of, and distinctions

between, the attorney-client privilege and the work-product doctrine, and the

importance of limiting recognition of evidentiary privileges when necessary to

achieve their purposes, as follows:

> Though they operate to protect information from discovery, the work-product doctrine and the attorney-client privilege serve different purposes.  The purpose behind the attorney-client privilege is "'to encourage clients to make full disclosure of facts to counsel so that he may properly, competently, and ethically carry out his representation.  The ultimate aim is to promote the proper administration of justice.'" In re Impounded, 241 F.3d 308, 316 (3d Cir. 2001) (quoting In re Grand Jury Proceedings, 604 F.2d 798, 802 (3d Cir. 1979)).  The work-product doctrine, by contrast, "promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation.  Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients." Westinghouse Elec. Corp. v. Republic of the Phil., 951 F.2d 1414, 1428 (3d Cir. 1991) (citations omitted).
>
> Though evidentiary privileges have important purposes, their recognition may result in the withholding of relevant information and so may obstruct the search for truth.  Indeed, the protections are effective only if they shield relevant evidence and thus they necessarily obstruct the search for the truth at a trial at which they are recognized either implicitly or explicitly.  Consequently, privileges should be recognized only when necessary to achieve their respective purposes. See Fisher v. United States, 425 U.S. 391, 403 (1976).

In re Chevron Corp., 633 F.3d 153, 164 (3d Cir. 2011).

Because the assertion of a claim of privilege "may result in the withholding of relevant information and so may obstruct the search for truth," In re Chevron Corp., 633 F.3d 153, 164 (3d Cir. 2011), it is also well-established that, " 'The burden of proving that the . . . privilege applies is placed upon the party asserting the privilege.' United States v. Landof, 591 F.2d 36, 38 (9th Cir. 1978)." Matter of Grand Jury Empanelled February 14, 1978, 603 F.2d 469, 474 (3d Cir. 1979). Therefore, the burden of proof is this case rests squarely with Wells Fargo, which has asserted the privilege. With this preliminary guidance in mind, we turn to consideration the attorney-client privilege.

The attorney-client privilege is meant to facilitate "full and frank communication between attorneys and their clients." Wachtel v. Health Net, Inc., 482 F.3d 225, 231 (3d Cir. 2007). The privilege "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." Upjohn v. United States 449 U.S. 383, 389 (1981). The privilege "applies to any communication that satisfies the following elements: it must be '(1) a communication (2) made between [the client and the attorney or his agents] (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.'" In re Teleglobe Communications Corp., 493 F.3d

345, 359 (3d Cir. 2007) (quoting the Restatement (Third) of the Law Governing Lawyers § 68 (2000)). Thus, the privilege reaches "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance." Fisher v. United States, 425 U.S. 391, 403 (1976); see also In re Ford Motor Co., 110 F.3d 954, 965 n.9 (3d Cir. 1997) (communications made by client and an attorney are privileged if made "for the purpose of securing legal advice."); United States v. Amerada Hess Corp., 619 F.2d 980, 986 (3d Cir. 1980).

The privilege applies both to information that the client provides to the lawyer for purposes of obtaining legal advice, as well as to the advice the attorney furnishes to the client. To this end, the Supreme Court has explained that "the privilege exists to protect not only the giving of professional advice those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." Upjohn, 449 U.S. at 390. However, the privilege extends only to the disclosure of the communications, and does not extend to disclosure of the underlying facts conveyed in those communications. Id. at 385.

While recognizing the value served by the privilege, courts must also be mindful that the privilege obstructs the truth-finding process and should be "applied only where necessary to achieve its purpose." Wachtel, 482 F.3d at 231; see also Westinghouse Elec. Corp., 951 F.2d at 1423. Therefore, because the purpose of the

privilege is to protect and promote the "dissemination of sound legal advice," it applies only to communication conveying advice that is legal in nature, as opposed to where the lawyer is providing non-legal, business advice. Wachtel, 482 F.2d at 231; see also Allendale Mut. Ins. Co. v. Bull Data Sys., Inc., 152 F.R.D. 132, 137 (N.D. Ill. 1993) (stating that the privilege is inapplicable where the legal advice is incidental to business advice); Hardy v. New York News, Inc., 114 F.R.D. 633, 643 (S.D.N.Y. 1987) ("The attorney-client privilege is triggered only by a client's request for legal, as contrasted with business advice . . . .").

Federal courts are further required to assess the application of the privilege on an individualized case-by-case basis. Thus, "Rule 501 [of the Federal Rules of Evidence] requires the federal courts, in determining the nature and scope of an evidentiary privilege, to engage in the sort of case-by-case analysis that is central to common-law adjudication." Id. at 230; see also Upjohn, 449 U.S. at 386, 396-97; In re Processed Egg Prods. Antitrust Litig., MDL No. 2002, 08-Md.-2002, 2011 U.S. Dist. LEXIS 120708, at *10-11 (E.D. Pa. Oct. 19, 2011). In addition, the party asserting the privilege bears the burden of providing that it applies to the communication at issue. In re Grand Jury, 603 F.2d 469, 474 (3d Cir. 1979). Accordingly, we may not rely upon broad and sweeping assertions of privilege to wholly excuse an individualized examination of particular communications.

Guided by these legal benchmarks, we have little difficulty concluding that the attorney client privilege is properly invoked with respect to the redacted portions of the document tendered to us for our review. Our review of the redacted portions of this document reveals that the document consists of notes of communications between attorneys and their corporate clients discussing the legal implications of actions being considered by Wells Fargo. The notes appear to be an internal, pre-decisional document of a confidential nature, and the content and context of the communications make it clear that legal advice is being sought by the participants in the noted conversation. Thus, all of the requisites for the exercise of the privilege are present here, and the claim of privilege is sustained.

An appropriate order follows:

## III.  ORDER

For the foregoing reasons, IT IS ORDERED as follows:

1.     With respect to the sole remaining contested redacted document the defendants' claim of privilege is SUSTAINED.

So ordered this 17th day of July, 2013.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge